IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IVFMD FLORIDA, INC.,                        §
                                            §
        Plaintiff,                          §
                                            §
v.                                          §            Civil Action No. 3:13-CV-3527-N
                                            §
IVFMD, P.A.,                                §
                                            §
        Defendant.                          §

## <u>ORDER</u>

This Order addresses Plaintiff IVFMD Florida, Inc.'s ("IVFMD Florida") amended motion for a preliminary injunction [Doc. 13] and Defendant IVFMD, P.A.'s ("IVFMD Texas") motion to dismiss [16].  Because IVFMD Florida fails to show a substantial likelihood of prevailing on the merits of its trademark claims, the Court denies its motion for a preliminary injunction.  The Court finds, however, that IVFMD Florida's trademark infringement and dilution claims, as asserted in its amended complaint, satisfy the pleading requirements of Federal Rule of Civil Procedure 8.  The Court therefore grants in part and denies in part IVFMD Texas's motion to dismiss.[1]

---

[1]This Order also address IVFMD Florida's motions for relief from Local Rule 83.10 [10] and for leave to supplement the record [26] and IVFMD Texas's motion for leave to file a surreply in opposition to IVFMD Florida's motion for a preliminary injunction [24].  The Court grants IVFMD Florida's motion for relief.  Because the Court does not rely on the arguments presented in IVFMD Texas's motion for leave to file a surreply, the Court denies it as moot.  The Court also denies IVFMD Florida's motion to supplement the record as moot.  Though registration of a trademark presents prima facie evidence of the mark's validity, a party is not entitled to such a presumption for a "pending" trademark application.  *See Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132, 1139 (C.D. Cal.

# I. THE TRADEMARK DISPUTE

This case concerns a trademark dispute between two fertility clinics. IVFMD Florida provides in vitro fertilization and other fertility services at several clinics in southern Florida. IVFMD Florida alleges that it has used the mark "IVFMD" (the "Mark") for approximately fifteen years in advertisements throughout the United States as well as internationally. IVFMD Texas provides similar services in North Texas. In October 2012, IVFMD Texas, formerly Advanced Reproductive Care Center, P.A., changed its name to "IVFMD" and changed its domain name to "www.ivfmd.net."

In May 2013, IVFMD Florida became aware that IVFMD Texas changed its name to incorporate the Mark. IVFMD Florida sent a cease-and-desist letter to IVFMD Texas requesting that they change their name. After IVFMD Texas repeatedly declined, IVFMD Florida initiated this suit in September 2013. IVFMD Florida now moves for a preliminary injunction to enjoin IVFMD Texas from using the Mark, and IVFMD Texas moves to dismiss the case.

Concurrently with this suit, IVFMD Florida has attempted to register the Mark with the United States Patent and Trademark Office ("PTO"). IVFMD Florida first filed a trademark application with the PTO in April 2013. The PTO denied the application in July 2013. As of January 2014, the PTO is still evaluating IVFMD Florida's application.

---

2007) ("While plaintiff may have a 'pending' trademark application . . . , this does not entitle it to any statutory presumption of ownership, validity, or the exclusive right to use the mark in commerce.").

## II. THE COURT DENIES THE
## PRELIMINARY INJUNCTION MOTION

In its complaint, IVFMD Florida asserts claims against IVFMD Texas for false designation of origin, infringement, unfair competition, and trademark dilution under the Lanham Act and Texas law. *See* Am. Compl. [11] ¶¶ 47–92.[2]  IVFMD Florida asks the Court to issue a preliminary injunction enjoining IVFMD Texas from using the Mark.  The Court holds that IVFMD Florida has not shown that the Mark is legally protectable, distinctive, or famous and thus has not shown a substantial likelihood of success on the merits.  Because IVFMD Florida has not carried its burden of persuasion, the Court declines to issue a preliminary injunction.

### A.  Standard for a Preliminary Injunction

To obtain a preliminary injunction, IVFMD Florida must show: (1) a substantial likelihood that it will ultimately prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the preliminary injunction is denied; (3) that the potential injury to IVFMD Florida outweighs whatever damage the proposed injunction may cause IVFMD Texas; and (4) that granting the preliminary injunction will not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).  "[T]he decision to grant or deny a preliminary injunction lies within the sound discretion of the district court." *Energy Dev. Corp. v. St. Martin*, 112 F. App'x 952, 957 (5th Cir. 2004) (unpub.).  A preliminary injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when

---

[2]Because the Court dismisses IVFMD Florida's false advertising claim, *see infra* Section III.D, it does not address it here.

the movant, by a clear showing, carries the burden of persuasion. *Harris County v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999).

### B. IVFMD Florida Has Not Shown a Protectable Interest in the Mark

To succeed on any of its infringement claims, IVFMD Florida must first establish ownership in a legally protectable mark. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010).[3] To be "legally protectable," "a mark must be distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). Courts classify marks by assigning them to "categories of generally increasing distinctiveness": (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The latter three categories – suggestive, arbitrary, or fanciful – are considered inherently distinctive and receive the strongest protection "because their intrinsic nature serves to identify a particular source of a product." *Amazing Spaces*, 608 F.3d at 240 (citation omitted). At the other end of the spectrum, "descriptive terms merit protection only if they have secondary meaning," and generic terms warrant no protection. *Id.*

---

[3]The Court's analysis with respect to each of these claims is the same. *See Amazing Spaces*, 608 F.3d at 235 n.7 ("The analysis with respect to . . . claims under the Lanham Act will be dispositive of . . . corresponding claims under Texas law as well. A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (citation omitted)).

ORDER – PAGE 4

**1. *The Mark is Descriptive.*** – A descriptive mark "identifies a characteristic or quality of an article or service." *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir. 1979). The dictionary defines the component parts "IVF" and "MD" as "in vitro fertilization" and "Doctor of Medicine," respectively. *See* RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1017, 1190 (2d ed. 2001).[4] Thus, the mark "IVFMD" "naturally direct[s] attention to the purpose or function of the product," which is fertility services provided by doctors. *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 792 (5th Cir. 1983), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004). Even a consumer unfamiliar with IVFMD Florida "would doubtless have an idea of its purpose or function." *Id.* Competitors in the fertility health industry commonly use the terms IVF, in vitro fertilization, MD, or medical doctor to describe their services. *See* Def.'s Resp. Mot. Prelim. Inj., App. 77–78 [19-3]. A Mark combining two abbreviations into one word is not suggestive if the individual components are descriptive. *See G. Heileman Brewing Co, Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 992–94 (7th Cir. 1989) ("[T]here must be a presumption that initials mean, or will soon come to mean, to the public the descriptive phrase from which they are derived."); *see also Nat'l Conference of Bar Exam'rs v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 488 (7th Cir. 1982) ("Under settled trademark law if the components of a trade name are common descriptive terms, a combination of such terms retains that quality.").

---

[4]"The dictionary definition of the word is an appropriate and relevant indication of the ordinary significance and meaning of words to the public." *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 11 n.5 (5th Cir. 1974) (internal quotation marks omitted).

IVFMD Florida contends that the Mark is suggestive and thus entitled to greater protection than a descriptive mark. "A 'suggestive' term 'suggests, rather than describes,' some characteristic of the goods to which it is applied and requires the consumer to exercise his imagination to reach a conclusion as to the nature of those goods." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir. 1980) (quoting *Vision Ctr.*, 596 F.2d at 115–16). The Court finds that the Mark describes quite literally the services offered by IVFMD Florida. It requires no stretch of the imagination to conclude that a business using the Mark "IVFMD" provides medical fertility services. The Court therefore concludes that the Mark is descriptive and not suggestive.

**2. IVFMD Florida Has Not Shown a Secondary Meaning.** – A descriptive mark is only protectable if it acquires a secondary meaning. A mark develops a secondary meaning "when, in the minds of the public, the primary significance of [the] mark is to identify the source of the product rather than the product itself." *Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F. Supp. 2d 726, 743 (N.D. Tex. 2011) (quoting *Amazing Spaces*, 608 F.3d at 237). To determine whether a mark has acquired a secondary meaning, the Fifth Circuit considers (1) the length and manner of use of the mark; (2) the volume of sales using the mark; (3) the amount and manner of advertising; (4) the use of the mark in newspapers and magazines; (5) consumer-survey evidence; (6) direct consumer testimony; and (7) the defendant's intent in copying the mark. *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008). In evaluating these factors, "the focus is on how [the evidence] demonstrates that the meaning of the mark or

trade dress has been altered in the minds of consumers." *Amazing Spaces*, 608 F.3d at 248 (quoting *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998)).

IVFMD Florida has failed to show that the mark has acquired a secondary meaning. IVFMD Florida presents evidence that it has used the Mark for fifteen years in advertising and as part of its phone number, email address, and internet domain name, *see* Pl.'s Mot. Prelim. Inj. 9; that it has had substantial sales while using the Mark, *id.*; and that its advertisements run throughout the United States and internationally, *id.* But "the question is not the *extent* of the promotional efforts, but their *effectiveness* in altering the meaning of [the trademark] to the consuming public." *Sec. Ctr., Ltd. v. First Nat. Sec. Ctrs.*, 750 F.2d 1295, 1301 (5th Cir. 1985) (emphasis in original) (quoting *Aloe Creme Labs., Inc. v. Milsan, Inc.*, 423 F.2d 845, 850 (5th Cir. 1970)).

But, other than internet message boards in which some users use "IVFMD" or its web address to indicate IVFMD Florida, *see* Pl.'s Mot. Prelim. Inj. 9, IVFMD Florida has provided no consumer testimony or survey evidence that supports its argument that consumers throughout the United States "equate[] the entity with the service." *Sec. Ctr., Ltd.*, 750 F.2d at 1306. "[L]ack of evidence in the form of an objective survey [can present] a significant hindrance to meeting the standard of proof required." *Id.* (citing *Vision Ctr.*, 596 F.2d at 119). IVFMD Florida also has not shown that IVFMD Texas intended to take advantage of IVFMD Florida's goodwill when IVFMD Texas adopted the Mark. As discussed, many fertility doctors would describe their services using the terms "IVF" and "MD." That IVFMD Texas combined the two does not necessarily lead to the conclusion

that its motives were improper.  Thus, the Court cannot infer from the evidence before it that "IVFMD" has acquired a secondary meaning.

### C.  IVFMD Florida Has Not Shown that the Mark is Distinctive or Famous

IVFMD Florida states claims for dilution under federal and Texas law.  Though both the federal and Texas anti-dilution statutes afford mark owners remedies against diluting activities, *compare* 15 U.S.C. § 1125(c)(1) (codified as amended by the Trademark Dilution Revision Act of 2006, Pub. L. No. 109–312, 120 Stat. 1730) *with* TEX. BUS. & COM. CODE § 16.29, they each require a different showing regarding the level of public recognition of the mark.[5]  Under the federal statute, a Mark must be famous and distinctive to be eligible for protection from dilution.  15 U.S.C. § 1125(c)(1); *see also Advantage Rent-A-Car, Inc. v. Enter. Rent-A-Car, Co.*, 238 F.3d 378, 381 (5th Cir. 2001).  In contrast, the Texas statute "requires only distinctiveness, not fame."  *Advantage Rent-A-Car*, 238 F.3d at 381; *see also* TEX. BUS. & COM.CODE § 16.29.

For the same reasons discussed previously in Section II.B, IVFMD Florida cannot show that the Mark is distinctive.  "Under Texas law, to determine whether a mark is distinctive enough for dilution, the court considers factors much like those used in the FTDA fame analysis: whether the mark is arbitrary, the length of time the user has employed the mark, the scope of the user's advertising and promotions, the nature and extent of the first user's business, and the scope of the first user's reputation."  *Advantage Rent-A-Car*, 238

---

[5]The Court addresses IVFMD Florida's dilution claims in more detail *infra* Section III.C.

F.3d at 381 (citation omitted).  Considering these factors, the Court determined that the Mark is descriptive without a secondary meaning.  *See supra* Section II.B.  While IVFMD Florida presented evidence of its advertisements using the Mark, it failed to show that it altered the meaning of the Mark to the public or that consumers equate "IVFMD" with its services.  *See id.*  The Mark is thus insufficiently strong to warrant protection from dilution under Texas law.

The Mark is also not famous.  "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  A court determining whether a mark is famous may consider all relevant factors, including (1) the duration, extent, and geographic reach of the mark's advertising and publicity; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of the mark's actual recognition; and (4) whether the mark was registered.  *Id.*  IVFMD Florida has presented evidence to support the first factor, but it has not provided evidence that shows the geographic extent of sales using the Mark or the extent of the Mark's actual recognition.  *See supra* Section II.B.  The Mark is also not registered.  Thus, IVFMD Florida has not shown that the Mark is sufficiently "famous" to receive protection under the federal anti-dilution statute.

### D.  Conclusion as to Preliminary Injunction

Without evidence that the Mark is legally protectable, distinctive, or famous, IVFMD Florida cannot show a substantial likelihood of success on the merits of its infringement or

dilution claims.  Because IVFMD Florida cannot satisfy the first prong of the preliminary injunction test, the Court need not address the other prongs.  Accordingly, the Court denies IVFMD Florida's motion for a preliminary injunction.

### III.  THE COURT GRANTS THE MOTION TO DISMISS IN PART AND DENIES IT IN PART

Though IVFMD Florida fails to meet its burden of persuasion for a preliminary injunction, its complaint alleges sufficient factual content to support its infringement and dilution claims under the more lenient standard for a motion to dismiss.  Accordingly, the Court denies IVFMD Texas's motion to dismiss as to the infringement and dilution claims.  As IVFMD Florida concedes that it fails to state a claim for false advertising, the Court grants the motion as to that claim.

### A.  Standard for Dismissal

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does

not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

Courts may reference materials attached to the pleadings, including documents attached to a motion to dismiss, so long as they "are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The complaint in this case refers to its PTO trademark application, *see e.g.*, Am. Compl. ¶ 10 [11], IVFMD Texas attaches the documents to its pleadings, *see* Def.'s Mot. Dismiss, App. 2–84 [16-1], and the protectability of the trademark is central to IVFMD Florida's claim. The Court therefore considers the application with the facts presented in the complaint.

### B. IVFMD Florida Adequately States Infringement Claims

As discussed earlier in this opinion, IVFMD Florida must (1) "establish ownership in a legally protectable mark" and (2) "show infringement by demonstrating a likelihood of confusion" to succeed on any of its infringement claims. *Amazing Spaces*, 608 F.3d at 235–36 (quoting *Smack Apparel Co.*, 550 F.3d at 474). IVFMD Texas argues that IVFMD Florida has failed to allege sufficient facts to show that the Mark is legally protectable or that

there exists a likelihood of confusion.  The Court disagrees and holds that IVFMD Florida's amended complaint sufficiently states claims for trademark infringement.

### 1. IVFMD Florida Adequately Alleges that Mark is Legally Protectable. – A mark

is legally protectable if it is distinctive, either because it is inherently so or because it has acquired a secondary meaning. *See Am. Rice*, 518 F.3d at 329.  IVFMD Florida contends that the Mark is, at least, descriptive. *See* Pl.'s Resp. Def.'s Mot. Dismiss 10 [20].  As descriptive marks are not inherently distinctive, IVFMD Florida must show that the Mark has a secondary meaning to receive trademark protection.  To determine whether a mark has acquired a secondary meaning, the Fifth Circuit considers (1) the length and manner of use of the mark; (2) the volume of sales using the mark; (3) the amount and manner of advertising; (4) the use of the mark in newspapers and magazines; (5) consumer-survey evidence; (6) direct consumer testimony; and (7) the defendant's intent in copying the mark. *Smack Apparel Co.*, 550 F.3d at 476.

IVFMD alleges in its amended complaint that it has used the Mark for fifteen years in advertising and on promotional materials as part of its phone number, email address, and internet domain name. *See* Am Compl. ¶ 12.  IVFMD Florida claims that it has had substantial sales while using the Mark. *See id.* ¶ 46.  IVFMD Florida further alleges that it has used the Mark in advertisements throughout the United States and internationally in print, on the radio and television, at promotional events, and online. *See id.* ¶¶ 12, 41.  IVFMD Florida alleges that consumers associate the Mark with IVFMD Florida clinics. *See id.* ¶¶ 13, 15, 46.  Finally, IVFMD Florida accuses IVFMD Texas of purposefully appropriating its

Mark to capitalize on its goodwill.  *See id.* ¶ 44.  Taken together, these allegations support IVFMD's claim that the Mark is legally protectable as a descriptive mark with a secondary meaning.

IVFMD Texas asks the Court to consider the PTO's rejection of IVFMD Florida's trademark application.  *See* Def.'s Mot. Dismiss 5–7, 15 ("The paucity of evidence showing secondary meaning was also integral to the repeated rejections and final refusal of Plaintiff's trademark applications; the USPTO concluded that even the voluminous evidence presented by Plaintiff in its trademark application evidenced 'efforts to develop distinctiveness' rather than actual distinctiveness." (emphasis omitted)).  Though "[r]egistration of a mark with the PTO constitutes prima facie evidence of the . . . registrant's exclusive right to use the registered mark," *Amazing Spaces*, 608 F.3d at 237, use, rather than registration, establishes ownership of a mark, *see Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990).  "A mark need not be registered in order to obtain protection."  *Smack Apparel Co.*, 550 F.3d at 475.  The parties disagree as to whether the PTO has conclusively denied IVFMD Florida's trademark application with respect to fertility services.  *Compare* Def.'s Mot. Dismiss 15 *with* Pl.'s Resp. Mot. Dismiss 4–7.  But, because an unregistered trademark may receive trademark protection, the fact that IVFMD Florida has not yet successfully registered the Mark is not fatal to its claim at the motion to dismiss stage.

### *2. IVFMD Florida Adequately Alleges a Likelihood of Confusion.* – Once a plaintiff shows that a mark is protectable, it must then demonstrate that the defendant's use of the

disputed mark "creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product at issue." *Smack Apparel Co.*, 550 F.3d at 478 (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000)).  In determining whether a mark is likely to cause confusion, courts in the Fifth Circuit look to eight nonexhaustive "digits of confusion": (1) the type of trademark, (2) mark similarity, (3) product similarity, (4) outlet and purchaser identity, (5) advertising media identity, (6) defendant's intent, (7) actual confusion, and (8) care exercised by potential purchasers. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors." *Am. Rice*, 518 F.3d at 329 (citation omitted).  As a general matter, whether infringement creates a likelihood of confusion is a question of fact that should not be addressed in a Rule 12(b)(6) motion, *see MCW, Inc. v. Badbusinessbureau.com, LLC*, 2004 WL 833595, at *15 (N.D. Tex. 2004), unless it is obvious from the face of the complaint that the plaintiff will not be able to make such a showing, *see, e.g.*, *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981) (holding that dismissal was appropriate where the goods are unrelated as a matter of law).

     ***Type of Trademark:***  As discussed, IVFMD Florida alleges that its Mark is at least descriptive with a secondary meaning and thus protectable. *See supra* Section III.B.1.

     ***Mark Similarity:***  IVFMD Florida alleges that IVFMD Texas uses all of the "IVFMD" Mark, including the capital letters, in its business name, on Facebook and Twitter,

and in other places.  Am. Compl. ¶¶ 16, 23, 24, 29.  That IVFMD Texas adds the tagline "WHERE MIRACLES BEGIN" after "IVFMD" on its trademark application, *see id.*, does little to distinguish the marks because even with the slogan, "IVFMD" stands out as the name of the entity.

*Product Similarity:*  "The greater the similarity between the products and services, the greater the likelihood of confusion."  *Elvis Presley Enters.*, 141 F.3d at 202 (quoting *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)).  IVFMD Florida and IVFMD Texas are both fertility clinics offering substantially the same services. *Id.* ¶¶ 9, 34, 35.

*Outlet and Purchaser Identity:*  IVFMD Florida operates multiple clinics; thus, IVFMD Florid alleges that there is a risk consumers might think IVFMD Texas clinics were owned or operated by IVFMD Florida.  *Id.* ¶ 40.

*Advertising Media Identity:*  Both IVFMD Florida and IVFMD Texas advertise similar services in similar channels; for example, both are searchable via Google and both have Facebook pages.  *Id.* ¶ 36.  IVFMD Florida further alleges that it advertises in Texas, where IVFMD Texas has its clinics.  *Id.* ¶ 41.

*Defendant's Intent:*  IVFMD Florida alleges that IVFMD Texas intentionally infringed on its Mark to take advantage of IVFMD Florida's goodwill in the fertility services industry.  *See id.* ¶ 44.

*Actual Confusion:*  IVFMD does not allege that any consumers have actually been confused.

ORDER – PAGE 15

*Care Exercised by Potential Purchasers:* "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Smack Apparel Co.*, 550 F.3d at 483 (citation omitted). In vitro fertilization is an expensive, long-term, invasive procedure, and potential purchasers are likely to exercise more care in selecting the service provider.

Though the latter two factors weigh against a finding that confusion is likely, IVFMD Florida has pled sufficient facts to show a likelihood of confusion. As IVFMD Florida has also adequately alleged that the Mark is legally protectable, the Court concludes that IVFMD Florida states claims for infringement under both Texas and federal law.

### C.  Dilution Claims

**1.  IVFMD Florida Adequately Alleges a Federal Dilution Claim.** – Section 43(c) of the Lanham Act, also known as the Federal Trademark Dilution Act ("FDTA"), provides as follows:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). Dilution may manifest itself either through "'blurring,' a diminution in the uniqueness or individuality of the mark, or . . . 'tarnishment,' an injury resulting from another's use of the mark in a manner that tarnishes or appropriates the goodwill and reputation associated with the plaintiff's mark." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109

F.3d 1070, 1081 (5th Cir. 1992) (citing 3 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION §§ 24:67–69 (2d ed. 1984); *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 965–66 (2d Cir. 1996)).

    To state a dilution claim under the FDTA, a plaintiff must show that (1) it owns a famous and distinctive mark; (2) the defendant commenced using a mark in a manner that dilutes the famous mark; (3) the similarity between the plaintiff's mark and the defendant's mark gives rise to an association between the two marks; and (4) the association is likely to impair the distinctiveness of (i.e., blur) or harm the reputation of (i.e., tarnish) the plaintiff's marks. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012) (citing *Louis Vuitton Malletier S.A. v. Haute Diggity Dog*, *LLC*, 507 F.3d 252, 264–65 (4th Cir. 2007)).

    *Famous:* "A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The FTDA provides that a court determining whether a mark is famous may consider all relevant factors, including (1) the duration, extent, and geographic reach of the mark's advertising and publicity; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of the mark's actual recognition; and (4) whether the mark was registered. *Id.* IVFMD Florida alleges that it has used the Mark for at least fifteen years in advertisements on multiple mediums throughout the United States and internationally, years before IVFMD Texas adopted the Mark in 2012. *See* Am. Compl. ¶ 12, 41. IVFMD Florida alleges that it has had

ORDER – PAGE 17

substantial sales while using the Mark. *Id.* ¶ 46. And IVFMD Florida alleges that the Mark "has become famous and is publically recognized as being associated with [IVFMD Florida's] medical services" as a result of substantial sales and advertising. *Id.* IVFMD Florida has not provided detailed information regarding the extent of the Mark's actual recognition – though it does allege that the Mark is well-recognized – and it has not registered the Mark. Nonetheless, IVFMD Florida's allegations are sufficient to support a plausible claim for relief based on the famousness of the Mark.

*Distinctive:* The federal anti-dilution statute also requires that the plaintiff show that the Mark is distinctive. For the reasons discussed previously in Section III.B.1., IVFMD Florida adequately alleges that the Mark is descriptive with a secondary meaning and thus is distinctive.

*Dilution:* The second element of a FDTA violation is that the defendant commenced using a mark in a manner that dilutes the famous mark. *Nat'l Bus. Forms*, 671 F.3d at 536. By the terms of the FTDA, the defendant's use of the mark must be "in commerce." 15 U.S.C. § 1125(c). IVFMD Florida alleges that IVFMD Texas uses substantially the same Mark to promote its fertility services in commerce. *See* Am. Compl. ¶ 62, 63. IVFMD Florida's allegations are thus sufficient to support this element of its claim.

*Similarity of the Marks:* The third element of a FDTA violation requires that the defendant's mark be so similar to the plaintiff's mark that the two appear to be related. *Nat'l Bus. Forms*, 671 F.3d at 536. As discussed previously in Section III.B.2., IVFMD Florida

ORDER – PAGE 18

alleges that IVFMD Texas uses all of the "IVFMD" Mark in much the same way as does IVFMD Florida.  *See* Am. Compl. ¶¶ 16, 23, 24, 29.

    ***Blurring or Tarnishing:***  Dilution may manifest itself either through "'blurring,' a diminution in the uniqueness or individuality of the mark, or  . . . 'tarnishment,' an injury resulting from another's use of the mark in a manner that tarnishes or appropriates the goodwill and reputation associated with the plaintiff's mark.'" *Cottonwood Fin., Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F. Supp. 2d 726, 741 (N.D. Tex. 2011) (quoting *Oxxford Clothes, Inc.*, 109 F.3d at 1081)).  IVFMD Florida seems to assert dilution under both theories, worrying in its complaint that consumers will confuse IVFMD Florida with IVFMD Texas and, as a result, consumers will form an unfavorable opinion of IVFMD Florida if IVFMD Texas provides inferior services.  *See* Am. Compl. ¶ 38, 40.  Thus, IVFMD Florida has adequately alleged that IVFMD Texas is using the Mark in a way that might dilute it by blurring or tarnishing the Mark.

    Taking IVFMD Florida's factual allegations as true, IVFMD Florida has stated a legally sufficient claim for relief under the federal anti-dilution statute.

    ***2.  IVFMD Florida Adequately Alleges a Texas Dilution Claim.*** – Texas's anti-dilution statute encompasses a broader array of potentially impermissible uses of protected marks than does the FTDA.  The Texas statute provides that:

> [a] person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services.  An injunction sought under this section

ORDER – PAGE 19

shall be obtained pursuant to Rule 680 *et seq.* of the Texas Rules of Civil Procedure.

TEX. BUS. & COM. CODE § 16.29.  Thus, a plaintiff asserting a Texas claim for dilution need only "show that it owns a distinctive mark and that there is a likelihood of dilution." *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278–79 (5th Cir. 2002) (citation omitted). The Fifth Circuit "look[s] to 'the general law of dilution . . . in construing the Texas statute.'" *Id.* at 279 (quoting *Oxxford Clothes, Inc.*, 109 F.3d at 1081.  As discussed in the previous section, IVFMD Florida presents sufficient factual content in its complaint to show that its Mark is distinctive and that there is a likelihood of dilution due to IVFMD Texas's use of the Mark.  Accordingly, the Court finds that IVFMD Florida has stated a legally sufficient claim for relief under the Texas anti-dilution statute as well.

### D.  The Court Dismisses IVFMD Florida's False Advertising Claim

Finally, IVFMD Texas argues that IVFMD Florida fails to allege any facts in support of its false advertising claim or specify the source in Texas law for the cause of action.  *See* Am. Compl. ¶¶ 76–81.  IVFMD Florida does not contest IVFMD Texas's characterization of the claim but does ask for leave to replead.  *See* Pl.'s Resp. Def.'s Mot. Dismiss 14 n.7. The Court therefore dismisses the claim without prejudice and allows IVFMD Florida to amend its pleadings to address the deficiencies of its false advertising claim.

### CONCLUSION

For the foregoing reasons, the Court (1) denies the motion for a preliminary injunction; (2) denies the motion to dismiss as to the infringement and dilution claims; and

(3) grants the motion to dismiss as to the false advertising claim.  The Court grants IVFMD

Florida leave to file an amended complaint within twenty-one (21) days of the date of this

order.


        Signed March 7, 2014.


                                            _____
                                                    David C. Godbey
                                            United States District Judge


ORDER – PAGE 21